564

487 A.2d 404

**COMMONWEALTH of Pennsylvania**

v.

**Marvin TURNER, Appellant.**

Superior Court of Pennsylvania.

Argued July 24, 1984.

Filed Jan. 11, 1985.

566

Michael A. Teir, Philadelphia, for appellant.

Donald A. Browns, Media, for Commonwealth, appellee.

Before CIRILLO, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

Appellant, Marvin Turner, upon summary conviction under the Vehicle Code for operating an overweight vehicle upon a bridge, was sentenced on February 28, 1980, to pay $6685.00 by a district justice.[1] Following a hearing *de novo* before the Court of Common Pleas of Delaware County, appellant was again found guilty. His first appeal to this court resulted in a remand for the filing of post-verdict motions. 308 Pa.Super. 32, 453 A.2d 1053. These were filed and argued before the trial court, which rendered its opinion and order on March 3, 1983, by which it affirmed appellant's conviction, reinstating the fine and costs which were imposed by the district justice. This appeal is taken from the judgment of sentence.

The facts of this case show that on February 11, 1980, appellant drove a tractor and trailer combination bearing five or six new cars over a bridge that had been posted with a two and one-half ton weight limitation. A borough police officer stopped appellant and bade him to follow the officer to a scale which was approximately 1.8 miles away. After the officer set the scale, appellant drove the truck onto the platform. The officer determined the total weight to be fifty-two thousand four hundred and seventy pounds (52,-470). The district justice found that this total exceeded the maximum limitation of the bridge by 44,470 pounds.

Appellant argues that the evidence did not support his conviction in that the Commonwealth did not prove that the specific scale used to weigh his truck was within its control in the wording of the statute,[2] did not explain the condition of the bridge,[3] nor establish whether the issuing officer was in uniform at the time he issued the citation.

1. Pursuant to 75 Pa.C.S.A. § 4902(e).

2. 75 Pa.C.S.A. § 4981(b) Scales on freeways.—The Department of Transportation, in cooperation with the Pennsylvania State Police, shall operate freeways at points which it deems necessary, scales and other equipment for detecting violations of the size and weight limitations prescribed by this chapter. *The department may also contract with persons or local authorities to use their scales.*

3. 75 Pa.C.S.A. § 4902(a) reads:

■ Appellant argues that because the scale utilized in this case was owned by a private concern and no evidence was introduced of a contract between the Commonwealth and that private concern, that somehow the scale cannot be said to be within the Commonwealth's control, 75 Pa.C.S.A. § 4981(b). We do not interpret the sentence, "the department may also contract with persons or local authorities to use their scales" as requiring that a specific contract be introduced at trial in order that the Commonwealth's proof be complete. This is so especially in light of the fact that a certificate of accuracy issued by the Bureau of Standard Weights and Measures for the Commonwealth of Pennsylvania, Department of Agriculture on July 24, 1979, was introduced into evidence at trial. It describes the scale as a Fairbanks Vehicle Scale, Model No. 6517 C, Serial No. 1879 M, with a 100,000 pound capacity. It is this court's opinion that the scale in question was adequately qualified and within the control and supervision of the Commonwealth, despite its private owner.

■ Appellant argues that the Commonwealth had the burden of establishing the condition of the bridge which made a weight restriction necessary. *See Commonwealth v. Geise*, 314 Pa.Superior Ct. 24, 460 A.2d 354 (1983). This contention did not appear in appellant's post-verdict motions. Pa.R.Crim.P. 1123. In fact, the last post-verdict motion submitted by appellant stated the opposite, that is, that the court improperly admitted evidence as to the condition of the bridge. Therefore, the contention is waived.

Finally, appellant requests that we discharge him for failure of the Commonwealth to present evidence as to

"The department and local authorities with respect to highways and bridges under their jurisdictions may prohibit the operation of vehicles and may impose restrictions as to the weight or size of vehicles operated upon a highway or bridge whenever the highway or bridge, by reason of deterioration or rain, snow or other climatic conditions, may be damaged or destroyed unless the use of vehicles is prohibited or the permissible weights reduced.

whether the officer issuing the citation was in uniform, as required by Pa.R.Crim.P. 51 A(1)(a).[4]

■ The record is devoid of any evidence on this issue. The issuing officer merely identified himself at trial as a police officer of the Borough of Folcroft. Appellant never raised this issue either before the District Justice or at the *de novo* hearing. Appellant, in reliance upon *Commonwealth v. Shelton*, 260 Pa.Superior Ct. 82, 393 A.2d 1022 (1978), now urges us to discharge him for this omission by the Commonwealth.[5] However, we are averse to the granting of this remedy and note that there are certain distinctions to be drawn between the Commonwealth's failure to institute criminal proceedings in accordance with Rule 51 and its failure to present testimony at trial as to whether the issuing officer was wearing a uniform.

*Shelton, supra* explains the procedure under Rule 51 by which an offender of the Vehicle Code may be cited. There is no question that the issuing authority in *Shelton* sent the

4. "Except as provided by subparagraphs A(1)(b) and (c), a citation shall be issued to the defendant by a police officer, *who shall be in uniform*, when the offense charged is a violation of a traffic ordinance or when it is a summary offense under the Vehicle Code;"

5. *Shelton, supra,* and *Commonwealth v. Jonnet,* 265 Pa.Superior Ct. 315, 401 A.2d 1228 (1979) held that Pa.R.Crim.P. 51 must be strictly complied with, mandating discharge for non-compliance.

"It has been held that summary proceedings, being in derogation of the common law, will require strict adherence to the law creating them. *Graver v. Fehr,* 89 Pa. 460 (1879). It has been stated that procedural rules "are not to be exalted to the status of substantive objectives." *McKay v. Beatty,* 348 Pa. 286–87, 35 A.2d 264 (1944). Viewing Rule 51, we believe that it provides for the very substance of the manner in which one who has offended the "Vehicle Code" may be cited, and a summary proceeding begun. Thus we hold that the Rule must be strictly construed. Rule 51, even when read together with the rules following it in "Chapter 50-Summary Cases," does not allow the sending of a copy of the citation in the situation where it has been filed by the police officer with the issuing authority. The proper-and only-procedure to follow after the initial institution of the summary proceeding is that the issuing authority shall issue a summons. We will not look for less than strict compliance with Rule 51. See the "Comment" to Rule 51 which reiterates and details the procedures commensurate with the rule and the purpose of it.

*Shelton, supra,* 260 Pa.Superior Ct. at 85, 393 A.2d at 1024.

defendant a copy of the citation rather than the required summons. And, as this court stated, in distinguishing *Shelton, supra,* and *Jonnet, supra,* by finding that a form labeled "Citation/Summons" was in substantial compliance with Rule 51:

> *Jonnet* and *Shelton* are distinguishable in that in those cases the document was not entitled a summons and in *Shelton* the form did not contain the notice of the four options provided to the defendant in response to the charge. While these cases do require "strict" rather than "substantial" compliance with the rules, we do not read them as requiring absolute compliance to the degree asserted herein.

> *Commonwealth v. Gerard,* 313 Pa.Superior Ct. 70, 75, 459 A.2d 414, 417 (1983).

Thus, while there is case law on certain deviations from Rule 51 involving the proper forms to be utilized in instituting summary proceedings, this court is not aware of any case in this Court or in the Supreme Court concerning the requirement in Rule 51 that the police officer be in uniform. As it is cast in this case, the uniform requirement is an element of proof which the Commonwealth failed to introduce at trial.[6] Yet, it is nevertheless a procedural requirement for the institution of summary proceedings, albeit different from the citation practice mandated by Rule 51, the very substance of the initiation of criminal proceedings. Faced with this hybrid substantive/procedural approach to the uniform requirement, the issue becomes what duties, if any, should devolve on a defendant who is aware that the requirement was not followed and what benefit, if any, should be enjoyed by him for the Commonwealth's failure to establish the necessary uniform requirement at trial.

6. In *Commonwealth v. Baldo,* 21 D. & C.3d 273, 275 (1981), the court listed as one of the elements which the Commonwealth must show in a prosecution for an overweight violation, "[t]hat the arresting officer was in full uniform at the time of the arrest." *See also Commonwealth v. Buehler,* 8 D. & C.3d 796 (1979).

■ We cannot say that the fact that an officer wore a uniform is strictly one of the elements to be proven by the Commonwealth in order to establish guilty beyond a reasonable doubt, as the necessity, for example, of proving the age of a victim would be in a prosecution for statutory rape. 18 Pa.C.S.A. § 3122. The overweight truck statute is silent as to the uniform requirement; it enters only because of the summary nature of the proceedings and the language of the applicable criminal rule. The uniform requirement, therefore, is important when the nature of the violation supporting the issuance of the summons is at issue, as it relates to the propriety of an arrest.

In *Commonwealth v. Grassmyer,* 237 Pa.Superior Ct. 473, 352 A.2d 182 (1975), a case of a motor vehicle cited for being overweight under the former sections of the Vehicle Code which controlled this violation, 75 P.S. §§ 903, 904, this court liberally interpreted the statute's requirement that the issuing trooper be "in uniform and shall exhibit his badge or other sign of authority." Appellant contended that he should be acquitted despite the fact that the trooper who stopped him wore the full uniform of the State Police, including official hat, insignia, name plate, and shoulder patches but did not display his badge. This court disagreed with appellant and interpreted the statute as requiring such indicia in order "to enable the motorist to be as certain as possible that the person who stops him is, in fact, a police officer." *Id.,* 237 Pa.Superior Ct. at 476, 352 A.2d at 183. A motorist is apprised of the veracity of the person who stops him by all of the indicia of the State police uniform even without the badge, said this court; thus the goals of the statute and the intent of the legislature were satisfied.

Applying this meaning to the uniform requirement as it is now mandated by Rule 51, may a defendant wait until he or she files post-verdict motions to raise a violation of the requirement, as in this case, or is the defendant under a duty, to bring it to the attention of the court at some earlier time under pain of waiver.

■ In this case, the lack of a uniform could have been raised at the hearing before the district justice, prior to the *de novo* hearing, or at the demurrer stage. However, only after remand by this court for the filing of post-verdict motions, two years after the initial conviction, was this issue brought to the attention of the trial court in the form of an insufficiency of evidence argument. It would more properly have been characterized as a challenge to the issuance of the citation, and, as such, should have been raised earlier.

It is instructive to refer to Pa.R.Crim.P. 70. However, since this case was tried two years before the rule's effective date, Rule 70 does not control.

### Rule 70. Defects in Form, Content, or Procedure-Summary Cases

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of this Chapter, unless the defendant raises the defect before the conclusion of the summary trial and the defect is prejudicial to the rights of the defendant.

That rule recognizes the inequity of a defendant's discharge occasioned only by a tardy realization of the deviation of the police or Commonwealth from the requirement of a rule. Although Pa.R.Crim.P. 70 does not control this case, it points out that it was incumbent on appellant at least to have raised the uniform requirement at some point earlier than he did.

The reason for this rests on the ordinary notions of fairness and judicial economy. If indeed the police officer did not wear a uniform when he cited appellant, that fact should have been brought to the attention of the district justice who may have dismissed the citation. If appellant had filed a motion to dismiss at the beginning or sometime during the *de novo* hearing, the court may have disposed of it at that time; thus, avoiding all subsequent proceedings.

■ We emphasize that our reasoning here lies in the fact that the uniform requirement is named in Pa.R.Crim.P. 51, and not in the overweight truck statute. Thus, it is not an element of the Commonwealth's proof, *per se.* Rather it is a necessary element of a valid citation's issuance. Just as any procedural violations must be raised at a time prior to trial in order that one or both parties may be able to present explanatory evidence if any, it is inequitable for an appellant to raise any deviation from this rule at a time when the only remedy is discharge. The uniform requirement is not an element that of necessity must await until the Commonwealth puts in its case. And if the reason the appellant had not raised the issue earlier is that the officer was in uniform, but neglected to say so at trial, then indeed, the Commonwealth's omission has not prejudiced appellant and he cannot expect to be discharged for that fact.

For the above reasons, judgment of sentence is affirmed.