**Christine Marie FRY and Bruce Allen Fry, Appellees.**

No. 0044 W.D. Appeal Docket 1996.

Supreme Court of Pennsylvania.

Submitted March 3, 1997.
Decided Aug. 18, 1997.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### *ORDER*

PER CURIAM:

AND NOW, this 18th day of August, 1997, we dismiss the appeal as having been improvidently granted.

■

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kenneth A. KINER, Appellant.**

Superior Court of Pennsylvania.

Argued March 5, 1997.
Filed June 4, 1997.
Reargument Denied Aug. 14, 1997.

---

1. As the Supreme Court noted with approval

 *I am extremely reluctant to decide anything* except what is necessary for the special case, because I believe by long experience that judgments come with far more weight and gravity when they come upon points which the Judges are *bound to decide,* and I believe that obiter dicta, like the proverbial chickens of destiny, come home to roost sooner or later in a very uncomfortable way to the Judges who have uttered them, and are a great source of embarrassment in future cases.
 *Darr v. Burford,* 339 U.S. 200, 214 n. 38, 70 S.Ct. 587, 595 n. 38, 94 L.Ed. 761 (1950).

Timothy J. O'Connell, Harrisburg, for appellant.

Daniel W. Stern, Assistant District Attorney, New Bloomfield, for Commonwealth, appellee.

Before CIRILLO, President Judge Emeritus, and POPOVICH and HESTER, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Perry County following appellant's conviction on the charge of driving while under the influence of alcohol (DUI).[1] Herein, appellant's sole contention is that the trial court erred in failing to suppress the evidence seized incident to his arrest. Specifically, he alleges that he was arrested unlawfully by William Gephart, an off-duty Pennsylvania State Police Trooper who was not in uniform when he arrested appellant. The lower court determined that appellant was not arrested by Trooper Gephart but that he was merely detained until a uniformed officer appeared on the scene. Therefore, the trial court denied appellant's motion to suppress. On appeal, the Commonwealth concedes that appellant was arrested by Trooper Gephart. However, the Commonwealth argues that Trooper Gephart was empowered to arrest appellant even though he was off-duty and not in uniform, or that, in the alternative, if the trooper lacked the authority to arrest appellant, suppression of the evidence was an improper remedy. For the reasons set forth below, we reverse.

Our standard of review in this case is well-settled. Our supreme court has held that:

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177, 178–179 (1992), *alloc. denied*, 533 Pa. 598, 617 A.2d 1273 (1992) (citation omitted).

We find that the trial court's factual findings are supported by the record and are as follows: On August 13, 1995, at approximately 10:15 p.m., Trooper William Gephart was travelling south on Routes 11–15 in Penn Township, Pennsylvania. At this time, he was off-duty, not in uniform and driving a private, unmarked automobile. While driving, Trooper Gephart noticed that the vehicle in front of him, appellant's light-colored sedan, was weaving and crossing into the opposite traffic lane. The trooper followed the sedan for approximately three miles. Appellant then drove his vehicle into a parking lot. Trooper Gephart followed appellant's vehicle, and, when given the opportunity, exited his vehicle and approached appellant, who was sitting in the driver's seat of his automobile. As the trooper approached appellant, he exhibited his badge and identified himself as a Pennsylvania State Trooper. Trooper Gephart detected a strong odor of alcohol emanating from appellant's vehicle. He then ordered appellant to exit his vehicle and requested his driver's license. The trooper noticed that appellant was stumbling, that he had "watery eyes" and that he was slurring his speech. Trooper Gephart then placed appellant in handcuffs, took possession of his driver's license, ordered him to stand next to his vehicle and told him that he was "under detention" because the trooper suspected that he was driving while under the influence

---

1. 75 Pa.C.S.A. §§ 3731(a)(2) and (a)(4).

of alcohol. The trooper informed appellant that he was contacting the state police barracks so that an on-duty, uniformed officer could respond to the scene. He then asked his parents, who had been following behind him in their own vehicle, to telephone the Newport State Police barracks and request the assistance of an on-duty, uniformed trooper. Trooper Gephart's parents so complied, and, approximately twenty minutes later, Trooper Carol Peters arrived at the scene. Upon arrival, Trooper Peters noticed appellant and Trooper Gephart standing next to appellant's vehicle. Trooper Gephart was restricting appellant's movement by holding his right arm. After conferring with Trooper Gephart, Trooper Peters informed appellant that he was under arrest for driving while under the influence of alcohol. Appellant was then transported to the state police barracks where he submitted to a breath test. The test revealed that his alcohol level was .19%.

Appellant was later charged with DUI. He filed a motion seeking to suppress all evidence seized as a result of his alleged illegal arrest by Trooper Gephart. The motion was denied. Appellant was then tried and convicted of DUI. This appeal followed.

▇▇▇▇ At the outset, we find that the trial court's conclusion that appellant was not arrested by Trooper Gephart was erroneous. As the Commonwealth concedes on appeal, appellant was clearly arrested by Trooper Gephart. A police encounter with a suspect may be characterized as a mere encounter, an investigative detention, a custodial detention or a formal arrest. *Commonwealth v. Haupt*, 389 Pa.Super. 614, 567 A.2d 1074 (1989). An "arrest" includes either a formal arrest or its functional equivalent, a custodial detention. *Haupt, supra.* In determining whether appellant was arrested or detained for investigative purposes by Trooper Gephart, we must consider the following:

Traffic stops, like *Terry* stops, constitute investigative rather than custodial detentions, unless under the totality of the circumstances the conditions and duration of the detention become the functional equivalent of an arrest. Among the factors generally considered in determining

whether a detention is investigative or custodial are: the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and the investigative methods used to confirm or dispel suspicions.

*Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269, 1274 (1995), *alloc. denied*, 546 Pa. 676, 686 A.2d 1308 (1996) (quoting *Commonwealth v. Douglass*, 372 Pa.Super. 227, 539 A.2d 412, 421 (1988) (Kelly, J., plurality opinion)) (citing *Commonwealth v. Ellis*, 379 Pa.Super. 337, 549 A.2d 1323 (1988)). "Whether an arrest has been made is viewed in light of the reasonable impression conveyed to the person subjected to the seizure rather than in terms of the subjective views of the police officer making the arrest." *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 67 (1994) (citation omitted).

In *Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269 (1995), based on an analysis of the aforementioned factors, we determined that the defendant was not arrested by an off-duty, non-uniformed police officer. Rather, we held that he was detained for investigatory purposes. In *Gommer*, an off-duty, non-uniformed police officer observed the defendant driving in a reckless and erratic manner. The officer signaled for the defendant to stop his car, approached the defendant after he stopped in a parking lot, identified herself as a police officer, requested that the defendant await the arrival of other troopers, informed the defendant that she believed that he was driving while under the influence of alcohol and took possession of the keys to the defendant's vehicle. The defendant remained seated in his automobile. Two on-duty, uniformed troopers then arrived at the scene, were informed of the defendant's actions and arrested him.

We find that the facts in this case are distinguishable from those in *Gommer*. Here, Trooper Gephart observed appellant driving in an erratic manner. After appellant stopped his automobile in a parking lot, the trooper decided to approach him.

Trooper Gephart then exited his vehicle with his badge, identification card, weapon and handcuffs. As Trooper Gephart approached appellant, he identified himself as a police officer and asked to see appellant's driver's license. The officer took possession of appellant's driver's license, ordered him out of his vehicle, handcuffed him and ordered him to stand next to his vehicle. The trooper informed appellant that he believed that he was driving while under the influence of alcohol, that he was being detained and that he was requesting the assistance of an on-duty, uniformed officer. In approximately twenty minutes, Trooper Peters, who was in uniform and on-duty, arrived at the scene. Upon arrival, she noticed that Trooper Gephart was restricting appellant's movement by holding his right arm. After conferring with Trooper Gephart, Trooper Peters removed Trooper Gephart's handcuffs from appellant's wrists and replaced them with her own handcuffs. She then transported appellant to the police station for a breath test.

■ Here, unlike in *Gommer*, the off-duty, non-uniformed trooper displayed his weapon, ordered the appellant out of his vehicle, handcuffed him and held him by his arm, thereby threatening and using force. We note that Trooper Gephart's subjective opinion that appellant was detained and not arrested by him is not controlling in this case. *Carter, supra.* Based on the totality of the circumstances, we find that appellant was arrested by Trooper Gephart, and, therefore, that the trial court erred in determining that appellant was merely detained for investigative purposes by the officer.

Having determined that appellant was arrested by Trooper Gephart, we must next determine whether he was authorized to make a warrantless arrest for a DUI offense committed in his presence while off-duty and not in uniform.[2] At issue is whether the actions of Trooper Gephart were in compliance with the statutory law defining the enforcement powers and duties of a Pennsylvania State Police Trooper with regard to violations of the Motor Vehicle Code, specifically DUI violations.

■ 75 Pa.C.S.A. § 6304 provides the following regarding the general enforcement powers of the Pennsylvania State Police with respect to violations of the Motor Vehicle Code:

> § 6304. Authority to arrest without warrant.
>
> (a) Pennsylvania State Police.–A member of the Pennsylvania State Police *who is in uniform* may arrest without a warrant any person who violates any provision of this title in the presence of the police officer making the arrest.
>
> \* \* \* \* \* \*
>
> (c) Other powers preserved.-The powers of arrest conferred by this section are in addition to any other powers of arrest conferred by law.

75 Pa.C.S.A. § 6304(a), (c) (emphasis added). "The effect of subsection (c) of this statute is to incorporate by reference into the Vehicle Code other existing statutes which bestow powers of arrest upon police officers." *Gommer*, 665 A.2d at 1271. With respect to arrests for driving while under the influence, the Vehicle Code states:

> (c) Certain arrests authorized.-In addition to any other powers of arrest, a police officer is hereby authorized to arrest with-

---

2. We note that this Court has examined the issue of whether officers are permitted to arrest suspects under the private citizen concept. We have held that when an officer acts under the color of state law in effectuating an arrest, the officer is acting in his official capacity and not as a private citizen. Therefore, in order for the arrest to be valid, the officer must have authority to effectuate the arrest. *Commonwealth v. Brandt*, —— Pa.Super. ——, 691 A.2d 934 (1997); *Commonwealth v. Bienstock*, 449 Pa.Super. 299, 673 A.2d 952 (1996).

Here, there can be no doubt that Trooper Gephart was acting under the color of state law when he arrested appellant. Although Officer Gephart was off-duty and not in uniform, the officer identified himself as a police officer, displayed his badge, displayed his department issued weapon and used his department issued handcuffs to restrain appellant. As such, we find that Trooper Gephart's actions were performed under his authority as a police officer and not as an arrest made by a private citizen. Accordingly, his conduct did not constitute a permissible citizen's arrest. *Commonwealth v. Price*, 406 Pa.Super. 166, 593 A.2d 1288 (1991), *aff'd*, 543 Pa. 403, 672 A.2d 280 (1996).

out a warrant any person who the officer has probable cause to believe has violated the provisions of this section, regardless of whether the alleged violation was committed in the presence of such officer. This authority to arrest extends to any hospital or other medical treatment facility located beyond the territorial limits of the police officer's political subdivision at which the person to be arrested is found or was taken or removed to for purposes of emergency treatment examination or evaluation provided there is probable cause to believe that the violation of this section occurred within the police officer's political subdivision.

75 Pa.C.S.A. § 3731(c).

In *Gommer, supra,* we analyzed Section 6304(a) and Section 3731(c) of the Code. We determined that it was not improper for an off-duty, non-uniformed state police officer to detain a suspected drunk driver until an on-duty, uniformed officer could respond to the scene and arrest the driver. We found that the off-duty, non-uniformed police officer's conduct did not violate Section 6304(b) or any of the other statutes incorporated by reference since the officer did not arrest the defendant. The Commonwealth urges this Court to apply the dictates of *Gommer* to the case *sub judice* and find that an off-duty, non-uniformed state police officer does not violate the Code when he makes a warrantless arrest of a drunk driver. This we decline to do.[3]

■ We find that the clear, explicit language of Section 6304(a) requires a state police trooper to be in uniform to effectuate an arrest for a violation of the Motor Vehicle Code. It is a well-settled rule of statutory construction that the legislature will not be presumed to have intended that additional language in a statute is mere surplusage, and, that, whenever possible, we must construe the statute so as to give effect to every

word. 1 Pa.C.S.A. §§ 1921, 1922. Accordingly, we find that the legislature intended the words "who are in uniform" to be given effect and to mean that only those state police officers who are in uniform may arrest motorists for violations of the Code.

■ Moreover, we note that in interpreting Section 6304(a), we must ascertain and effectuate the intent of the legislature. 1 Pa.C.S.A. § 1921(a). This Court has held that the legislature's intent in requiring an officer to be in uniform is "to enable the motorist to be as certain as possible that the person who arrests him is, in fact, a police officer." *Commonwealth v. Turner,* 337 Pa.Super. 564, 487 A.2d 404, 408 (1985) (law requiring that a police officer issuing a traffic ordinance or a summary offense under the vehicle code must be in uniform is strictly construed; uniform requirement for issuance of a traffic citation is important when it relates to the propriety of an arrest). Our interpretation of the statute furthers this legislative intent. our conclusion that the trooper must be in uniform. The statute's heading, "Authority to arrest without warrant," and its subheading, "Pennsylvania State Police," indicate that the text of the statute delineates the circumstances under which a Pennsylvania State Police Trooper is authorized to arrest without a warrant. The text of Section 6304(a) indicates that such an arrest may be made if (1) the officer is in uniform and (2) the Motor Vehicle Code is violated in the officer's presence. We agree with the Commonwealth that Section 3731(c) of the Vehicle Code expands the arrest powers of state police troopers regarding DUI offenses. Section 3731(c) permits troopers to make warrantless arrests for DUI violations even if the violations are not committed in their presence. However, Section 3731(c) does not make reference to Section 6304(a)'s uniform requirement. The Section does not expand or make an exception to the require-

---

3. The Commonwealth argues that we are bound by *Gommer*'s conclusion that there is "no explicit limitation on the authority of a state police officer to make a traffic stop or arrest only when the officer is on duty and/or in uniform." *Id.* 665 A.2d at 1272. As discussed previously, we determined that the defendant in *Gommer* was detained for investigatory purposes by the off-

duty, non-uniformed state trooper. Any suggestion in *Gommer* that an off-duty, non-uniformed state trooper does not violate the Code when he arrests a defendant is dictum which does not control this case. *See U.S. Steel Co. v. County of Allegheny,* 369 Pa. 423, 86 A.2d 838 (1952) (dictum interpreting a statute is not controlling).

ment in Section 6304(a) that the arresting officer must be in uniform. In fact, Section 3731(c) expressly indicates that the arrest powers enunciated in the statute are "in addition to any other powers of arrest." Giving the phrase "in addition" its common meaning, we interpret this to mean that the arrest powers found in Section 3731(c) must be united with those found in Section 6304. 1 Pa.C.S.A. § 1903.[4] Accordingly, the uniform requirement found in Section 6304(a), a general provision regarding arrest powers under the Motor Vehicle Code, is applicable to Section 3731(c), a specific provision regarding arrest powers for DUI offenses.

■ In addition, we note that while this Court has not held specifically that Section 6304(a) requires state police troopers to be in uniform when arresting a suspect for a violation of the Motor Vehicle Code, we have acknowledged the importance of the uniform requirement. *See Price*, 593 A.2d at 1292 (Federal Bureau of Investigation agent had no authority to arrest the defendant for violation of the Motor Vehicle Code since "only uniformed police officers are authorized to make warrantless arrests for violations of the Motor Vehicle Code."); *Turner, supra; Commonwealth v. Woodard*, 307 Pa.Super. 293, 453 A.2d 358, 360 (1982) ("Uniformed police can lawfully stop a vehicle when they witness a traffic offense."). Accordingly, we find that Trooper Gephart acted beyond his statutory authority when he arrested appellant for driving while under the influence of alcohol while the trooper was off-duty and not in uniform.

Having found that Trooper Gephart was not authorized under the Motor Vehicle Code to arrest appellant, we must determine whether the evidence seized pursuant to appellant's warrantless arrest must be suppressed. The Commonwealth argues that Trooper Gephart's violation of the Code was technical and that his actions did not constitute a fundamental, constitutional violation of appellant's rights. Accordingly, the Commonwealth argues that suppression of the evidence was a remedy out of all proportion

to the violation or to the benefits gained to the end of obtaining justice while preserving individual liberties. We disagree.

■ We acknowledge that our supreme court has held that not every perceived violation of the law requires the automatic exclusion of evidence. *See Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421 (1985) (a violation of the rules of criminal procedure does not necessarily require suppression of evidence which is seized by police pursuant to a search warrant). If the violation is largely technical in nature, suppression of the evidence is not warranted. *Commonwealth v. Saul*, 346 Pa.Super. 155, 499 A.2d 358 (1985) (police failed to proceed properly in an extra-territorial investigation; however, suppression of the evidence was not needed). In *Mason, supra*, and *Saul, supra*, we determined that the activity engaged in by the police was not violative of statutory authority; only the manner and process in which the activity was conducted was faulty. However, where the violation of the law implicates constitutional concerns and/or fundamental rights, exclusion of the evidence seized by police is warranted. *Price, supra*. In those cases involving arrest in the absence of statutory authority, this Court has held that suppression of the evidence is the appropriate remedy. *Price, supra; Brandt, supra; Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991) (campus police officer was without authority to arrest driver who ran a red light, and, therefore, suppression of the evidence was needed). We have explicitly held that when an officer does not have statutory authority to arrest a suspect, the violation is substantive and implicates fundamental, constitutional rights. *Savage, supra*. When a suspect is arrested unlawfully by an agent acting as "an instrument of the state," the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution are violated.[5] *Price,*

---

**4.** Webster's Dictionary defines "addition" as "the act or process of adding; the joining or uniting

of one thing to another." Webster's Dictionary 24 (4th. ed.1976).

**5.** The Fourth Amendment and Article I, Section

*supra.* "The remedy of exclusion under such facts is not invoked as a means of punishing the state, but rather as a means of assuring that a defendant's constitutional rights are protected adequately when infringed upon by the use of unlawful state action." *Id.* 672 A.2d at 284. Our supreme court has held that in determining whether the exclusionary rule applies, the good or bad faith of an individual acting under the color of state law is irrelevant. *Id. See Brandt, supra* (where housing authority officer who did not have jurisdiction to arrest the defendant, suppression of the evidence was proper). "If we did not suppress the evidence in this type of case, the law could be made a mockery by willful noncompliance without any adverse consequences." *Savage,* 589 A.2d at 700 (citation omitted).

 Here, we find that suppression of the evidence was the proper remedy. Trooper Gephart, acting under the color of state action, acted beyond his statutory authority when he arrested appellant. The legislature has indicated that a State Police Trooper is authorized to make a warrantless arrest for a DUI offense only if the officer is in uniform. Trooper Gephart, who was off-duty and not in uniform, failed to comply with his statutory authority. We find that Trooper Gephart's failure to comply with the Code's uniform requirement was a substantive violation, and, as such, appellant's fundamental, constitutional rights were violated.

The fact that the trooper could have arrested appellant lawfully if he would have been on-duty and in uniform is inconsequential to a determination of whether his actions warrant the remedy of exclusion. *Price, supra* (the fact that the defendant could have been arrested lawfully by someone other than the Federal Bureau of Investigation agent was inconsequential). Since appellant was arrested illegally, the evidence seized by police must be suppressed. *Price, supra.* An opposite result in this case would, in effect, permit willful noncompliance of the uniform requirement. This we will not do and cannot do, as such a ruling would be in clear violation of 75 Pa.C.S.A. § 6304(a).[6]

We note that the arrival of Trooper Peters, an on-duty, uniformed officer, at the scene does not alter our conclusion in this case. Had appellant not been arrested illegally by Trooper Gephart, the evidence would not have been seized. Therefore, we find that the lower court should have suppressed the evidence in this case.[7]

Judgment of sentence reversed. Case remanded for proceedings consistent with this decision. Jurisdiction is relinquished.

---

8 of the Pennsylvania Constitution protect against unreasonable searches and seizures effectuated under the color of state action. *Price, supra.*

6. The practical result of our decision, when read in connection with *Gommer,* is that an off-duty, non-uniformed Pennsylvania State Police Officer is permitted to detain a motorist for a violation of the Code until an on-duty, uniformed officer is able to appear at the scene and investigate the matter. However, an off-duty, non-uniformed officer is not permitted to arrest a motorist for a violation of the Code. This is a power reserved for an on-duty, uniformed officer.

7. We note that the Commonwealth argues that there was no evidence to suppress in this case. We disagree. Appellant submitted to a breath test after he was arrested. The breath test results were evidence, and, therefore, they should have been suppressed.