589 A.2d 696

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Robert SAVAGE, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1990.

Filed Feb. 14, 1991.

Reargument Denied April 29, 1991.

Stuart B. Suss, Asst. Dist. Atty., West Chester, for Comm., appellant.

Before CAVANAUGH, OLSZEWSKI and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

This is an appeal by the Commonwealth from an order of the court of common pleas denying the Commonwealth's motion for reconsideration of suppression ruling.[1] The underlying suppression order suppressed evidence obtained following the stop of appellee's vehicle and subsequent arrest for driving while under the influence of alcohol.[2] Appellant presents the following issues for our determination: (1) whether the stop of appellee's vehicle and his subsequent arrest were in compliance with the statute governing the police powers of campus police;[3] and (2) assuming non-compliance with the above statutory mandate, whether suppression of evidence is an appropriate remedy under the circumstances. We affirm.

The trial court made the following findings of fact:

1.  We note that appellee failed to file an appellate brief with this Court, even though appellee was given notice by the prothonotary on September 13, 1990 that appellee had until October 4, 1990 in which to file a brief. It was not until December 5, 1990, the very day oral argument was scheduled to be heard, that appellee's counsel filed application to withdraw from this case under Pa.R.A.P. 907(b).

2.  75 Pa.C.S.A. § 3731(a)(1) and (4).

3.  71 P.S. § 646.

On March 4, 1989 at about 1:15 A.M., Officer Martin of the West Chester University Police Department was on duty with his vehicle parked on the Campus of the University. At that time the officer observed a pick up truck go through a red traffic signal at the intersection of High Street and Linden Street and turn into Linden Street and traveled east. Linden Street was an established one-way street with traffic limited to westward traffic only. High Street and Linden Street are both off of the University Campus in the Borough of West Chester. Officer Martin left his position on the University Campus and drove off of the University Campus into the Borough of West Chester in pursuit of the truck. At the intersection of Linden Street and Walnut Street the truck stopped and the driver got out of the truck and ran in front of the truck and then down Walnut Street. Officer Martin chased the driver who disappeared. Officer Martin heard noise in some bushes near a house on Walnut Street. Officer Martin then ordered the person in the bushes to come out of the bushes. The Defendant emerged from the bushes which were up on a hill. Officer Martin then ordered the Defendant to come down off of the hill to the sidewalk. Defendant came down from the hill to the side walk. The Defendant did not say anything to the officer. Officer Martin then told the Defendant that they were going back to the truck. At that time Officer Martin considered that the Defendant was in his control and that the Defendant was not free to leave. When Officer Martin chased the Defendant he did so with intent to take the Defendant into his custody when he caught him. The Defendant did not tell Officer Martin that he was the driver of the truck and the officer never saw the keys to the truck in question in the Defendant's possession. Officer Martin did not see the face of the driver of the truck. Officer Martin is not positive that the Defendant was the Driver of the truck. Officer Martin is positive that the Defendant was the person who was in the bushes on Walnut Street. Officer Martin never saw the Defendant or the truck in question on the University Campus. Offi-

cer Martin was not acting at the request of the Mayor of West Chester borough or other executive authority. Officer Martin was not acting under the direction of the local law enforcement authorities. Subsequently police officers of the borough of West Chester arrived at the place where the truck had stopped. The two summary offenses involved did not present an immediate *clear* and *present* danger to persons or property, as the evidence presented did not set forth specifically that any person or persons or property was in danger at the time that Officer Martin acted. We find that Officer Martin deliberately positioned himself in his stationary vehicle on campus a short distance from the border of the University and the Borough with his vehicle pointed in the direction of the borough. We find that Officer Martin's primary concerns at the time were the happenings across High Street with regard to the ingress and egress of people to and from the "Rat" (Ratherskeller Bar) in the borough of West Chester.

(R.R. 36–39.)

■ The issue on appeal is whether the actions of Officer Martin were in compliance with the statutory law defining the powers and duties of campus police, set forth at 71 P.S. § 646 (Supp.1990). The relevant portion of that statute provides:

**§ 646. (Adm.Code § 2416). Capitol Police, Commonwealth Property Police and Campus Police**

The Capitol Police, Commonwealth Property Police and the Security or Campus Police of all State Colleges and universities, State aided or related colleges and universities and community colleges shall have the power, and their duty shall be:

      \*      \*      \*      \*      \*      \*

(e) To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, municipalities in Dauphin County wherein State Buildings are located and in municipalities

wherein said colleges, universities and community colleges are located:

*   *   *   *   *   *

(h) * * *

Security and Campus Police shall exercise their powers and perform their duties only on the premises of the State colleges and universities, State aided or related colleges and universities and community colleges by or for which they are employed and only and after they have completed a course of training including crisis intervention training and riot control as approved by the Department of Education except, that Campus Police employed by State owned colleges and universities located in any municipalities, other than cities of the first class or second class, are authorized, in emergency situations occurring within the municipality, upon the request of the mayor or other executive authority and under the direction of the local law enforcement authorities, to exercise those powers and perform those duties conferred pursuant to this section within the municipality for the limited purpose of aiding local authorities in emergency situations. When so acting, the Campus Police shall be acting within the scope of the authority of this act and are, at all times, State employes of this Commonwealth and entitled to all the rights and benefits accruing therefrom.

As amended 1965, Sept. 28, P.L. 553, § 4; 1968, July 7, P.L. 297, No. 149, § 1; 1975, July 30, P.L. 149, No. 75, § 1, imd. effective; 1978, Sept. 27, P.L. 777, No. 149, § 4, imd. effective.

We agree with the trial court that the conduct of Officer Martin was in violation of § 646. Subsection (h) specifically sets forth the circumstances under which campus police may exercise their powers off campus and in the adjoining municipality. No evidence exists on the record which would prove that Officer Martin had been requested by the Mayor of West Chester Borough (or other executive authority) and under the direction of law enforcement authorities, to aid West Chester Borough Police in patrolling the streets of the

borough in an attempt to apprehend drunk drivers. Without such evidence, we find Officer Martin's conduct to have violated § 646 and, accordingly, was without authority to apprehend and arrest the appellee.[4]

The Municipal Police Jurisdiction Act, 42 Pa.C.S.A. § 8951 *et seq.*, provides in relevant part:

> § 8953(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

> \*   \*   \*   \*   \*   \*

> (5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

Unlike the trial court, we find this provision to be inapplicable to the present situation because no evidence has been presented that Officer Martin was employed by a municipality.[5] To the contrary, Officer Martin was acting as a campus police officer employed by West Chester University.

---

4. We disagree with appellant's reliance on *Commonwealth v. Holderman*, 284 Pa.Super. 161, 425 A.2d 752 (1988), where we found no violation of 71 P.S. § 646 where a campus police officer pursued and stopped the defendant, after observing the defendant make an improper left-hand turn from a campus road onto a street within the adjoining borough. We limited our holding in that decision to instances where the offense occurs on campus and the perpetrator attempts to escape into the adjoining municipality. *Id.*, 284 Pa.Superior Ct. at 169, 425 A.2d at 755–56. Therefore, that case is inapposite to the case *sub judice*, as both the offense and the "hot pursuit" took place off campus.

5. Because we find this section to be inapplicable to the present case, we express no opinion on the trial court's substantive analysis of § 8953(a)(5).

*See Commonwealth v. Roberts,* 356 Pa.Super. 309, 514 A.2d 626, 629 (1986) (finding § 8953 inapplicable to park police officers, stated, ".... it is clear that one of the goals of the legislature in enacting the statute was to promote a cohesive working relationship among municipal police departments"). In the present case, the conduct of the campus police officer must be examined exclusively under 71 P.S. § 646, which, as discussed above, was violated in this instance.[6]

▇ Having found the above statutory violation and that Officer Martin was without authority to stop and arrest appellee, we must determine whether the trial court erred in remedying this violation with a suppression of the evidence obtained as a result of the unlawful seizure. With respect to the standard of review of a suppression court's ruling:

> On review, our responsibility is 'to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings.' *Commonwealth v. Roberts,* 356 Pa.Super. 309, 514 A.2d 626, 628 (1986), *citing, Commonwealth v. Goodwin,* 460 Pa. 516, 521, 333 A.2d 892, 895 (1975).

The trial court concluded that Officer Martin did not have probable cause to believe that appellee, whom he found in the bushes a short distance away from the intersection, was the same person who had fled from the truck. We believe that this legal conclusion drawn by the trial court from these undisputed facts was erroneous.

> The crucial test in determining the presence of probable cause is whether 'the facts and circumstances known to the police or about which they have reasonably trustworthy information at the time of the arrest ... would warrant a person of reasonable caution in believing the suspect has committed or is committing a crime.'

6. Appellant's citations to cases involving Capitol Police, decided under both 71 P.S. § 646 and 42 Pa.C.S.A. § 8953, are inapposite, as the powers of Capitol Police and Campus Police are not identical under 71 P.S. § 646. *See,* § 646(h).

*Commonwealth v. Fischer,* 348 Pa.Super. 418, 502 A.2d 613 (1985) [citations omitted].

The facts indicate that Officer Martin lost sight of the person, who fled from the truck, only momentarily. Additionally, Officer Martin testified that he found appellee hiding in the bushes only one residence away from the intersection. We find that this scenario would warrant a reasonable person in believing that appellee had been the driver of the truck. Therefore, we cannot affirm the trial court's suppression order on the basis of a lack of probable cause. Even though probable cause may have existed to pursue and arrest appellee, Officer Martin, nonetheless, did not have the *power* to engage in such conduct.

Much opposing authority exists with respect to the propriety of suppression in the context of a violation of the Municipal Police Jurisdiction Act.[7] In *Commonwealth v. Merchant,* 385 Pa.Super. 264, 560 A.2d 795 (1989), this Court attempted to distinguish these two lines of cases on the basis of technicality verses the substantiveness of the violation. With respect to violations which are merely procedural or technical, discussion of *Commonwealth v. Mason,* 507 Pa. 396, 490 A.2d 421 (1985), is necessary. In *Mason,* a Montgomery County police officer, having concluded that appellee committed a burglary in Montgomery County, made application and affidavit to a magistrate in Reading, Berks County, for a warrant to search appellee's Reading apartment. A search warrant was issued and the Montgomery police, accompanied by two Reading police officers, searched the appellee's apartment. A panel of this Court, finding a violation of Rule 2004 of the Pennsylvania Rules of Criminal Procedure because the Reading police did not "participate" in the search, granted suppression of the evidence obtained. On appeal, our Supreme Court held that suppression was an inappropriate remedy for a violation of the Rules of Criminal Procedure relating to the issuance

7. Because both the Municipal Police Jurisdiction Act and 71 P.S. § 646 involve extra-territorial police powers, we find the existing authority to be of precedential weight in evaluating the propriety of the suppression of evidence in the present case for violation of § 646.

and execution of search warrants when, as in the case before it, the violation was more technical than substantive. In *Commonwealth v. Saul*, 346 Pa.Super. 155, 499 A.2d 358 (1985), following the *Mason* decision, a panel of this Court determined that a violation of the Act, by virtue of police failure to proceed properly in an extra-territorial investigation, did not require suppression of evidence seized. In both of these cases, the activity engaged in by police was not violative of statutory authority; only the *manner* and *process* in which the activity was conducted was faulty. But in *Commonwealth v. Fiume*, 292 Pa.Super. 54, 436 A.2d 1001 (1981), and *Commonwealth v. Roberts*, 356 Pa.Super. 309, 514 A.2d 626 (1986), both cases involving extra-territorial *arrests* in the absence of police authority, this Court held that the suppression of evidence was an appropriate remedy. In *Commonwealth v. Merchant, supra*, where a police officer on routine patrol outside of his primary jurisdiction arrested a drunk driver, a panel of this Court held the violation of the Act to be entirely substantive and ruled suppression to be the appropriate remedy. In coming to the conclusion that this was the appropriate remedy, the Court reasoned that had there been compliance with the Act, appellant would have never been stopped, searched, and arrested.

Additionally, this Court stated, "If there was never a threat of suppression, the law could be made a mockery by willful non-compliance without any adverse consequences." *Id.*, 385 Pa.Superior Ct. at 274, 560 A.2d at 800.

In the present case, although not presented with a case under the Municipal Police Jurisdiction Act, we find that the conduct of Officer Martin, a campus police officer, was a true substantive violation of 71 P.S. § 646, and, hence, suppression of the evidence is an appropriate remedy. Had the officer complied with the above statutory mandate, appellee would never have been stopped and arrested and was, therefore, truly prejudiced by the noncompliance. An opposite result in the present case would, in effect, grant a license to campus police officers to patrol the surrounding

municipalities without invitation and in usurpation of the powers of municipal police. This we will not do and cannot do, as such ruling would be in clear violation of 71 P.S. § 646(h).[8]

Accordingly, the trial court's order denying appellant's motion for reconsideration of suppression order is affirmed.

CAVANAUGH, J., concurs in the result.

---

**8.** Section 646(h) provides very narrow circumstances under which a campus police officer may exercise his or her powers in a surrounding municipality. As the conduct (arrest) of Officer Martin did not comply with § 646(h), we may not otherwise hold that it was legal. The legalization of the arrest under the circumstances of the case *sub judice* must come from our legislature through appropriate amendment to 71 P.S. § 646(h).