**Edward HORTON,**

**v.**

**COMMONWEALTH of Pennsylvania, DE-
PARTMENT OF TRANSPORTATION,
BUREAU OF DRIVER LICENSING,
Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 14, 1997.

Decided April 21, 1997.

Reconsideration Denied June 19, 1997.

Timothy P. Wile, Assistant Counsel In-
Charge, and Harold H. Cramer, Assistant
Chief Counsel, Harrisburg, for appellant.

Paul D. Boas, Pittsburgh, for appellee.

Before McGINLEY and FLAHERTY, JJ.,
and JIULIANTE, Senior Judge.

McGINLEY, Judge.

The Department of Transportation, Bu-
reau of Driver Licensing (DOT) appeals from
an order of the Court of Common Pleas of
Allegheny County (trial court) that sustained
the appeal of Edward Horton (Horton) from
a one-year suspension of his operating privi-
lege pursuant to Section 1547(b)(1) of the
Vehicle Code (Code), 75 Pa.C.S.
§ 1547(b)(1).[1]

On December 3, 1995, University of Pitts-
burgh Police Sergeant Vernon Barkley
(Sgt.Barkley) observed a green Dodge Ram
Charger fail to stop at a red traffic light
located at the intersection of Bigelow Boule-
vard and Forbes Avenue in the City of Pitts-
burgh. Sgt. Barkley stopped the vehicle on
Bouquet Street. Sgt. Barley placed Horton
under arrest for driving under the influence
after observing his demeanor and detecting
the odor of alcohol on his breath. Horton
was informed that his refusal to submit to

---

1. Section 1547 of the Code provides:
    **(b) Suspension for refusal.-**
    (1) If any person placed under arrest for a
    violation of section 3731 (relating to driving
    under the influence of alcohol or controlled
    substance) is requested to submit to chemical
    testing and refuses to do so, the testing shall
    not be conducted but upon notice by the police
    officer, the department shall suspend the oper-
    ating privilege of the person for a period of 12
    months.

chemical testing would result in the suspension of his operating privilege for one year. Horton refused to submit to chemical testing. By official noticed dated January 31, 1996, DOT informed Horton that his operating privilege was to be suspended for one year as the result of his refusal to submit to chemical testing on December 3, 1995. Horton appealed his suspension to the trial court.

At a *de novo* hearing, Horton challenged the suspension, contending that Sgt. Barkley did not have the authority to arrest him and any refusal to submit to chemical testing could not be the basis for his suspension. The trial court sustained Horton's appeal, concluding:

> The record indicated that the arrest was made by a privately employed security officer on a public roadway rather than on property owned by the officer's employer. We agreed with the Defendant that the arrest was therefore improper and so rendered the request for submission to chemical testing also improper and the refusal of that request of no consequence.

Opinion of the Trial Court, September 30, 1996, at 1.

On appeal DOT contends that the trial court erred when it determined that a University of Pittsburgh Police Officer had no authority to effectuate an arrest under the Code and that the arrest of Horton for driving under the influence was illegal.[2] In cases involving the suspension of a driver's license for refusal to submit to chemical testing, DOT must establish: 1) that the licensee was placed under arrest for driving under the influence; 2) that he was requested to submit to chemical testing; 3) that he was informed that a refusal to submit to such testing would result in a suspension of his operating privileges; and 4) that the licensee refused to submit to the test. *Department of Transportation, Bureau of Driver Licensing v. Pestock*, 136 Pa.Cmwlth. 694, 584 A.2d 1075 (1990), *appeal denied*, 528 Pa. 619, 596 A.2d 801 (1991).

Initially, DOT contends that because the University of Pittsburgh is a "state-related" institution the campus police are "police officers" and are authorized to make arrests pursuant to Section 2416 of The Administrative Code of 1929 (Code)[3], 71 P.S. § 646.

There is no dispute that the University of Pittsburgh is a "state-related" institution.[4] Section 2 of the College and University Act, 24 P.S. § 2505–2 provides that "campus police" are "[e]mployees of an institution of higher education who exercise powers of arrest under authority of law or ordinance." Section 2416 of the Code, 71 P.S. § 646 provides:

> The ... Campus Police of all State colleges and universities, State aided or related colleges and universities ... shall have the power, and their duty shall be:
>
> . . . .
>
> (e) To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of ... Pittsburgh ... and in municipalities wherein said colleges, universities and community colleges are located:
>
> . . . .
>
> (h) To arrest any person who shall ... commit any other offense ... and carry the offender before the proper alderman, justice of the police or magistrate and prefer charges against him under the laws of the Commonwealth.
>
> Security and Campus Police *shall exercise their powers and perform their duties only*

---

2. Our scope of review in a license suspension case is limited to determining whether the trial court abused its discretion or committed an error of law and whether the court's findings are supported by substantial evidence. *Wheatly v. Sook Suh*, 217 N.J.Super. 233, 525 A.2d 340 (1987).

3. Act of April 9, 1929, P.L. 177, *as amended.*

4. Section 202 of the University of Pittsburgh–Commonwealth Act, Act of July 28, 1966, Special Sess., P.L. 87, 24 P.S. § 2510–202 provides that

"it is hereby declared for purposes of this act to extend Commonwealth opportunities for higher education by establishing University of Pittsburgh as an instrumentality of the Commonwealth to serve as a State-related institution...." Section 2 of the College and University Security Information Act, Act of May 26, 1988, P.L. 448, 24 P.S. § 2502–2 provides the following "[s]tate-related institutions ... the University of Pittsburgh...."

*on the premises of the State colleges and universities, State aided or related colleges and universities and community colleges by or for which they are employed* .... (emphasis added).

In *Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991) Officer Martin of the West Chester University Police Department observed a pick up truck go through a red traffic signal at the intersection of High Street and Linden Street, both streets located in the Borough of West Chester, not part of the university campus. Officer Martin left the campus in pursuit of the truck and gave chase until the truck stopped and the driver fled on foot. Officer Martin "heard noise in some bushes near a house on Walnut Street ... [and] ordered the person in the bushes to come out...." *Id.* at 448, 589 A.2d at 697, *quoting* the Court of Common Pleas of Chester County at R.R. 36–39. Robert Savage (Savage) emerged from the bushes. He never admitted that he was the driver of the truck and Officer Martin never saw Savage or the truck on campus. Officer Martin admitted that he was not sure whether Savage was the driver of the vehicle. Subsequently, police officers of the Borough of West Chester arrived at the scene. The trial court denied the Commonwealth's motion for reconsideration of suppression ruling.

On appeal the Superior Court determined that Officer Martin was not in compliance with the statutory law defining the powers and duties under Section 2416 of the Code, 71 P.S. § 646:

We agree with the trial court that the conduct of Officer Martin was in violation of § 646. Subsection (h)[5] specifically sets forth the circumstances under which campus police may exercise their powers off campus and in the adjoining municipality. No evidence exists on the record which would prove that Officer Martin had been requested by the Mayor of West Chester Borough ... to aid ... Boro Police in patrolling the streets of the borough in an attempt to apprehend drunk drivers.

....

In the present case ... suppression of the evidence is an appropriate remedy. Had the officer complied with the above statutory mandate, appellee [Savage] would never have been stopped and arrested and was, therefore, truly prejudiced by the noncompliance. An opposite result in the present case would, in effect, grant a license to campus police officers to patrol the surrounding municipalities without invitation and in usurpation of the powers of municipal police. This we will not and cannot do, as such ruling would be in clear violation of 71 P.S. § 646(h).

*Id.* at 450–51, 454, 589 A.2d 696, 589 A.2d at 700.

As in *Savage*, Sgt. Barkley observed Horton commit a traffic offense on a public street located in the City of Pittsburgh, not "on the premises" of the University of Pittsburgh. Pursuant to Section 2416 of the Code Sgt. Barkley was not authorized to arrest Horton for driving under the influence and any refusal to submit to chemical testing was inconsequential.[6]

5. Section 2416(h) also provides that campus police can exercise duties off campus "in any municipalities, other than cities of the first class or second class, ... in emergency situations occurring within the municipality, upon the request of the mayor or other executive authority...." We note that the City of Pittsburgh is a city of the second class.

6. DOT has cited *Department of Transportation v. Wysocki*, 517 Pa. 175, 535 A.2d 77 (1987); *Commonwealth v. Switzer*, 375 Pa. Super.137, 543 A.2d 1216; and *Commonwealth v. Holderman*, 284 Pa. Super. 161, 425 A.2d 752 (1981) for the proposition that campus police have the authority to make an off campus arrest. We believe that these cases are not controlling. *Wysocki* involved the Pennsylvania State Police, not campus

police, conducting a traffic check on Route 512. Our Pennsylvania Supreme Court determined that although the initial stop may have been improper the suspension is valid where the trooper had reasonable grounds to believe that the licensee operated his vehicle while under the influence. *Switzer* involved the Capitol Police who are not statutorily restricted to exercising authority on the premises of state colleges and universities. In *Holderman* the Superior Court determined that "[i]n order for a campus police agency to adequately protect the campus and its residents ... its officers must be permitted to pursue and arrest persons who commit summary offenses *on campus and attempt to escape into the adjoining municipality*." *Id.* at 167, 425 A.2d 752, 425 A.2d at 756 (emphasis added).

Accordingly, we affirm the decision of the trial court.

### ORDER

AND NOW, this 21st day of April, 1997, the order of the Court of Common Pleas of Allegheny County at SA 0227 of 1996, dated September 30, 1996, is affirmed.