C. Larry McKINLEY, Appellant,

v.

COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 5, 2000.

Decided April 19, 2001.

John B. Mancke, Harrisburg, for appellant.

Timothy P. Wile, Harrisburg, for appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION

SAYLOR, Justice.

Appeal was allowed to determine whether the authority vested in officers of the Harrisburg International Airport police rendered them "police officers" for purposes of enforcing the provisions of the Motor Vehicle Code's Implied Consent Law.

At the time of the incident under review, the Harrisburg International Airport ("HIA") was owned and operated by the Commonwealth of Pennsylvania, through

its Department of Transportation, Bureau of Aviation, which maintained authorization to employ (subject to gubernatorial approval) individuals commissioned as "police officers." *See* 74 Pa.C.S. § 5903.[1] The Department exercised this prerogative through the HIA police force.

On January 4, 1997, a duly commissioned HIA police corporal in a marked vehicle observed a black Ford sport utility vehicle, which was initially parked on airport property on a ramp connecting the main airport drive to a public highway, cross the roadway and strike a concrete curb on its opposite side. Concerned by this erratic driving, the corporal followed the vehicle, which then accelerated and crossed the road's centerline. Not yet in a position to initiate a traffic stop, the corporal continued his pursuit as the vehicle left the airport, activating his emergency lights after it crossed the centerline twice again. The vehicle traveled an additional two-tenths of one mile before stopping approximately one-half mile from the airport. Upon approaching the driver, Appellant C.

Larry McKinley ("McKinley"), the HIA corporal detected a strong odor of alcohol; he then administered field sobriety tests, which McKinley failed. The corporal arrested him for driving under the influence ("DUI") and explained to him the Implied Consent Law, as required by Section 1547(b)(2) of the Motor Vehicle Code. *See* 75 Pa.C.S. § 1547(b)(2).[2] McKinley refused to submit to chemical testing, and, therefore, upon its receipt of notice of such refusal, Appellee, the Pennsylvania Department of Transportation, Bureau of Driver Licensing (the "Bureau"), suspended McKinley's driver's license for a period of one year as mandated by the statute. *See* 75 Pa.C.S. § 1547(b)(1), *supra* note 2.[3]

McKinley lodged a statutory appeal from the administrative license suspension in the court of common pleas. At a *de novo* hearing, McKinley conceded his refusal to submit to chemical testing but argued that the HIA corporal lacked authority to invoke the Implied Consent Law or otherwise enforce the provisions of the Vehicle Code, since he was not a "police

---

1. Subsequently, in 1998, ownership, control, and management responsibility for HIA was transferred to the Susquehanna Area Regional Airport Authority.

2. Section 1547 of the Vehicle Code, commonly referred to as the Implied Consent Law, provides, in pertinent part:

 (a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:
 (1) while under the influence of alcohol or a controlled substance or both; . . . .
 ⁎ ⁎ ⁎
 (b) Suspension for refusal.—

 (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
 (2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.
 75 Pa.C.S. § 1547.

3. The record does not reflect, nor have the parties advised, whether and to what extent the Commonwealth pursued a criminal prosecution against McKinley for a DUI offense.

officer" pursuant to the terms of the statute. *See* 75 Pa.C.S. § 1547(a)(1), *supra* note 2 (providing for a driver's implied consent to submission to chemical testing "if *a police officer* has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle ... while under the influence of alcohol or a controlled substance or both" (emphasis added)); *see also Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Kline,* 559 Pa. 646, 653, 741 A.2d 1281, 1284 (1999)(reflecting the requirement that individuals must qualify as police officers under the Vehicle Code in order to lawfully enforce its provisions). Alternatively, McKinley argued that, even assuming, for the sake of argument, that the HIA corporal possessed the requisite authority on airport property, it effectively lapsed when he pursued McKinley beyond HIA grounds. Adopting this latter argument, the common pleas court overturned the suspension of McKinley's driver's license.[4]

On further appeal, the Commonwealth Court reversed in a divided, *en banc* opinion. *See McKinley v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 739 A.2d 1134 (Pa.Cmwlth.1999).[5] Concerning the parties' arguments regarding the HIA corporal's legal authority to act as a police officer for purposes of the Implied Consent Law, the majority noted that the Aviation Code's enabling provision for HIA police references the powers of constables, as does a provision from Title 71 that is incorporated into the enabling

provision by reference. *See McKinley,* 739 A.2d at 1137–38 (citing 74 Pa.C.S. § 5903(a)(10), 71 P.S. § 1791.1). Accordingly, the majority appeared to accept that, to the extent that such provisions would govern, the HIA corporal's authority would be limited to that of a constable. *See id.* Since such officials lack the power to make DUI stops and arrests, *see Commonwealth v. Roose,* 551 Pa. 410, 413, 710 A.2d 1129, 1130 (1998), the conclusion would follow that HIA officers would similarly lack the requisite authority.

Nevertheless, the Commonwealth Court found that the Aviation Code was not controlling. The majority observed that, where not inconsistent, powers and duties arising under the Aviation Code are to be exercised in accordance with the Administrative Code of 1929.[6] *See McKinley,* 739 A.2d at 1137 (citing 74 Pa.C.S. § 5903(b)). The majority determined that a provision of such code pertaining to "Commonwealth Property Police" vested officers providing protection to Commonwealth property with the powers of municipal police. *See McKinley,* 739 A.2d at 1138 (citing 71 P.S. § 646). Viewing HIA officers as "Commonwealth Property Police," the majority discerned a conflict between the Administrative Code of 1929 and the Aviation Code's direct and incorporated references to constabular authority. *See id.* According to the majority, the Administrative Code of 1929 prevailed in this conflict under the "last in time" rule of statutory construction, *see* 1 Pa.C.S. § 1936 (provid-

---

4. The common pleas court's rationale also subsumed a requirement that, to support suspension of a license under Section 1547(a), sufficient grounds must develop on airport property warranting a reasonable belief that a licensee was driving under the influence. The court found that such grounds were not present; indeed, it found insufficient cause to believe that any violation of the Vehicle Code had occurred on HIA property.

5. Initially, a three-judge panel of the Commonwealth Court affirmed; however, the panel's decision was withdrawn upon *en banc* reconsideration.

6. Act of April 9, 1929, P.L. 177 (as amended 71 P.S. §§ 51–732).

ing that, when two irreconcilable statutes are enacted, the statute latest in passage shall prevail). *See McKinley*, 739 A.2d at 1138. Thus, the majority concluded that the HIA corporal possessed the arrest powers of a municipal police officer and was therefore a "police officer" for purposes of the Vehicle Code. *See id.* Further, the majority determined that the corporal's authority was not limited to airport grounds, but rather, could be properly exercised throughout the Commonwealth pursuant to the provisions of Section 8953(a)(2) of the Judicial Code, 42 Pa.C.S. § 8953(a)(2), establishing the limited statewide jurisdiction of municipal police officers. *See McKinley*, 739 A.2d at 1139.

The dissenting opinion took the position that the HIA corporal's authority was expressly limited to that of the constabulary. *See McKinley*, 739 A.2d at 1141 (Kelley, J., dissenting). As the constabulary lacks a general power of arrest, the dissent concluded that HIA officers were not "police officers" for purposes of the Implied Consent Law. In response to the majority's assertion of a statutory conflict, the dissent noted that the Aviation Code itself requires that, in such situations, its own terms should prevail. *See id.* (citing 74 Pa.C.S. § 5903(b)).

We allowed appeal limited to the issue of whether an HIA corporal is a "police offi-cer" for purposes of Section 1547 of the Vehicle Code.[7]

Presently, McKinley maintains that, under the Aviation Code, the powers of HIA officers are expressly limited to those of constables; accordingly, HIA police lack a general power of arrest and, correspondingly, are not "police officers" for purposes of the Implied Consent Law. McKinley asserts that the Commonwealth Court's decision to invoke the provisions of the Administrative Code of 1929 pertaining to "Commonwealth Property Police" to confer upon HIA police the powers of municipal police officers was manifestly incorrect. The Bureau, on the other hand, endorses the Commonwealth Court's reliance upon the Administrative Code of 1929 and argues, alternatively, that application of the Aviation Code's provisions would also fully support the Commonwealth Court's disposition. Further, to the extent that concerns are presented regarding an extraterritorial aspect to the HIA corporal's encounter with McKinley, the Bureau points to a line of Commonwealth Court decisions holding that, while considerations regarding an officer's territorial jurisdiction may be pertinent in suppression proceedings in criminal cases, they have no relevance in civil license suspension proceedings pursuant to the Implied

---

7. This Court's holdings in *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), and *Kline*, 559 Pa. at 646, 741 A.2d at 1281, reflect that at least certain officers must meet training requirements to support their legal authority as "police officers" for purposes of enforcing the provisions of the Vehicle Code. No question is presented here concerning the applicability of these requirements to HIA officers or the extent of the HIA corporal's training, as such was not within the scope of the limited allowance of appeal, and, further, the issue was deemed by the Commonwealth Court to have been waived. *See McKinley*, 739 A.2d at 1137. We note, however, that McKinley did seek allowance of appeal concerning whether the corporal observed a specific violation of the Vehicle Code on airport premises (the trial court held that he had not, *see supra* note 4; however, the Commonwealth Court disagreed, *see McKinley*, 739 A.2d at 1139 (citing 75 Pa.C.S. § 3714 (careless driving), and 75 Pa.C.S. § 3301 (driving on the right side of the roadway))). In connection with such effort, McKinley argued that the HIA corporal lacked extraterritorial authority to conduct the stop and arrest, and that the suspension of his license should therefore be deemed invalid. Although appeal was not allowed on these questions, the fact of their preservation by McKinley is pertinent to our disposition, *infra*.

Consent Law. The Bureau argues that these decisions find strong support in the enactment's remedial purposes, namely, to address the social harm caused by impaired driving.

As noted, the Implied Consent Law provides for a driver's implied consent to submission to chemical testing if a "police officer" has reasonable grounds to believe that the person was operating a motor vehicle while under the influence. 75 Pa. C.S. § 1547(a). "Police officer" is defined, for purposes of the Vehicle Code, as "a natural person authorized to make arrests for violations of the law." 75 Pa.C.S. § 102.

The Department of Transportation's authority to provide police protection at HIA is reflected in Section 5903 of the Aviation Code, 74 Pa.C.S. § 5903, which provides, in pertinent part:

(a) **Powers enumerated.**—The department is authorized to:

\*　　\*　　\*

(10) Provide police protection in accordance with the act of May 21, 1943 (P.L. 469, No. 210)[71 P.S. §§ 1791, *et seq.*], entitled "An act providing for commissioning as police officers certain employes of institutions maintained in whole or in part by the Commonwealth; conferring upon them the powers of constables in certain cases; . . ."; and perform arrests and collect and retain all fines arising from infractions of the law including, but not limited to, vehicle parking violations.

\*　　\*　　\*

(b) **Procedures.**—The powers and duties granted by this act shall be exercised in accordance with the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929, where not inconsistent with this chapter.

74 Pa.C.S. § 5903. These provisions incorporate by reference Section 1.1 of the Act of May 21, 1943, P.L. 496, No. 210 (codified at 71 P.S. § 1791.1), captioned "Certification of names of employes to act as police officers at buildings or installations; commissions; powers." This enactment provides that:

the head of each administrative department having under its jurisdiction any building or installation owned by the Commonwealth, or any building or installation, for the protection of which the administrative department is responsible, shall certify to the Governor the names of *employes* of such administrative department *who shall act as police officers at such buildings or installations.* If the Governor shall approve the persons designated, he shall issue to each a commission under which *each employee shall have and exercise full power to make arrests for all violations of the law which they may witness upon any part of the premises of any such building or installation as aforesaid,* and to serve and execute warrants issued by the proper local authorities for any violation of law committed thereon or thereat. For such purposes and generally on the premises of such building or installation, *the persons so commissioned shall have all the powers and prerogatives conferred by law upon constables of the Commonwealth.*

71 P.S. § 1791.1 (emphasis added). It is undisputed that the HIA corporal possessed a gubernatorial commission in compliance with these provisions.

 Pursuant to direct references in Section 5903 of the Aviation Code, as well as by way of its incorporation of Section 1791.1 of Title 71, the HIA corporal was a police officer for purposes of the Implied Consent Law. The Aviation Code invested in the HIA officer the power to "perform

arrests and collect and retain all fines arising from infractions of the law." 74 Pa. C.S. § 5903(a)(10). Correspondingly, by reference to Section 1791.1, the officer possessed "full power to make arrests for all violations of the law which [he] may witness upon any part of the premises of any such building or installation as aforesaid." 71 P.S. § 1791.1. The authority so provided facially meets the definitional requirement of Section 102 of the Vehicle Code, namely, authorization "to make arrests for violations of the law." 75 Pa.C.S. § 102.

The Commonwealth Court suggested, and McKinley argues, that the legislative references to constables also contained in these statutes function as a specific limitation upon the authority of HIA officers. Such reasoning, however, ignores the express provisions conferring upon HIA officers the power to make arrests for violations of the law generally, a power not possessed by the constabulary pursuant to *Roose*, 551 Pa. at 413, 710 A.2d at 1130. *But see* 1 Pa.C.S. § 1922(2) (prescribing that "the General Assembly intends the entire statute to be effective and certain"). Therefore, although the Legislature clearly conferred constabular powers upon HIA police, a correct interpretation yields the conclusion that its references to the power of arrest were intended to supplement such authority. Notably, there are other instances of legislative drafting in which certain officers are afforded overlapping powers of police officers and constables in a similar fashion. *See, e.g.,* 36 P.S. § 3305 (providing officers appointed by the Delaware River Joint Toll Bridge Commission with "powers conferred by law on police officers or constables," subject to express limitations); 55 P.S. § 413 (providing that certain employees of the Board of Commissioners of Navigation for the Delaware River "shall have the powers of police officers and constables" in enforcement matters).[8]

Since the HIA corporal was a police officer pursuant to the express terms of the Aviation Code, we need not consider at length the Commonwealth Court's decision to invoke the provisions of the Administrative Code of 1929. We merely note our agreement with the reasoning applied in Judge Kelley's dissenting opinion concerning this point, namely, that Section 5903(b) of the Aviation Code requires that inconsistencies be resolved in favor of the application of its own provisions rather than any more general, conflicting provisions of the Administrative Code of 1929. *See McKinley*, 739 A.2d at 1141–42 (Kelley, J., dissenting).[9]

---

**8.** It is also noteworthy that, concurrently with its delegation of powers to the Department of Transportation in relation to HIA, the General Assembly separately authorized certain municipal airport authorities to employ officers having "the power to act in accordance with the provisions of Title 75 (relating to vehicles)." 74 Pa.C.S. § 5904. It seems unlikely that the Legislature would have intended to deny officers employed by the Department of Transportation the same authority in the performance of their duties concerning the protection of persons and property at HIA.

**9.** Even if this were not the case, the provision of the Administrative Code of 1929 cited by the Commonwealth Court pertains to "Commonwealth Property Police." *See* 71 P.S.

§ 646. The General Assembly appears to have employed the phrase as a term of art deriving from Section 2402 of the Administrative Code of 1929, which grants the Department of General Services ("DGS") power:

> [t]o employ such captains, sergeants of police and police officers, as may be necessary to preserve good order in the Capitol grounds and buildings, Pittsburgh State Office Building and grounds, Philadelphia State Office Building and grounds[.] ... Such captains, sergeants and officers shall be known as the Capitol Police and Commonwealth Property Police.

71 P.S. § 632(b). As the General Assembly has not used the term "Commonwealth Property Police" elsewhere to refer to any other

We have concluded that the HIA corporal met the Vehicle Code's definition of police officer in the first instance. However, the common pleas court accepted McKinley's argument that the officer's police authority ended at the airport boundaries and that such limitation was outcome determinative. Moreover, the Commonwealth Court's references to the statewide jurisdiction of municipal police suggest that it viewed the extent of the corporal's territorial jurisdiction as relevant to the question of whether he should be deemed a police officer for purposes of his off-premises encounter with McKinley. We proceed, therefore, to review the breadth of the HIA corporal's territorial jurisdiction in light of the limited issue upon which appeal was allowed. The pertinent questions are: 1) was an HIA officer's territorial jurisdiction limited to airport property?; and 2) does the issue of territorial jurisdiction affect the determination of whether one is a "police officer" under the Implied Consent Law?

With regard to the first of these issues, preliminarily, we note that, in several examples of legislative drafting, when the General Assembly has intended to limit the jurisdiction of security personnel and police officers, it has done so in explicit terms. See, e.g., 4 P.S. § 325.215(a) (limiting the jurisdiction of security personnel employed by the state horse racing commission to race meeting grounds); 22 Pa. C.S. § 501 (granting certain approved personnel employed by enumerated nonprofit corporations the authority to act as police officers "in and upon, and in the immediate and adjacent vicinity of, the property of the corporation"). Conversely, in other examples, when it has intended to confer

upon officers authority throughout the Commonwealth, the Legislature has also clearly so stated in the statute. See, e.g., 61 P.S. § 309.1 (prescribing arrest authority directed to the apprehension of parole violators); 72 P.S. § 8279 (conferring authority upon field investigators of the Department of Revenue to arrest, inter alia, those engaged in the sale of unstamped or counterfeit cigarettes). As the statutes presently under review are not specific in either regard, a closer examination is warranted.

Two possible interpretations arise concerning the manner in which the General Assembly empowered HIA police. First, the enabling provisions could be read as affording a grant of authority flowing directly from the Legislature, unconstrained by the jurisdiction of the employer-agency or the primary impetus for the officers' employment. Under such an interpretation, absent express limitation, the officers' territorial jurisdiction might be construed quite broadly, since the General Assembly's own jurisdiction extends to the boundaries of the Commonwealth. Alternatively, the enabling provisions for HIA police could be construed as crafting the officers' authority to correspond with that of the administrative agency that they serve, as well as to the purposes of the officers' commissioning. Legislative drafting along the latter lines would favor a construction yielding a narrower concept of territorial jurisdiction which would be no greater than that of the administrative agency and would be directed to the specific security purposes underlying the employment.

class of police officers, Commonwealth Property Police are only those officers employed by DGS to patrol these enumerated areas. Because the HIA police were not employed by DGS or for the described purposes, there is

no conflict between the provisions of the Administrative Code of 1929 empowering "Commonwealth Property Police" and those of the Aviation Code authorizing HIA officers.

A model incorporating aspects of both of these approaches is provided by the statutory conception of municipal police jurisdiction. The powers of municipal police officers are expressly defined, in the first instance, according to a concept of "primary jurisdiction," *see* 42 Pa.C.S. § 8952 (primary municipal police jurisdiction), affording, *inter alia,* a general power of arrest within the geographic area corresponding to the territorial limits of the municipality employing the officer. *See id.* This exemplifies the constrained, derivative approach—municipal police officers, in the first instance, lack authorization to make arrests outside of the territorial limits of their employer-municipality. In a separate provision, however, the General Assembly has vested municipal police officers with certain arrest authority outside the territorial limits of the employer-municipality. *See* 42 Pa.C.S. § 8953 (statewide municipal police jurisdiction). This constitutes direct authorization from the General Assembly that is unconstrained by the employer-municipality's jurisdiction, but which is subject to legislatively defined limits directed to specific purposes.

The particular statutory terms enabling HIA officers to obtain authority to conduct arrests, *see* 74 Pa.C.S. § 5903 (pre-scribing that HIA officers may "perform arrests"); 71 P.S. § 1791.1 (affording HIA officers "full power to make arrests for all violations of the law which they may witness upon any part of the premises of any such building or installation as aforesaid"), are silent with respect to any boundaries within which such authority may be exercised or a primary purpose underlying such conferral.[10] Viewed in isolation, this might be read as suggesting a broad, direct grant of authority from the General Assembly. Section 1791.1, however, initially allocates authority to department heads having jurisdiction over government buildings or installations and includes the express limitation that appointees may act as police officers "*at such buildings or installations.*" 71 P.S. § 1791.1 (emphasis added). From this and the general framing of both Section 1791.1 and the Aviation Code, it is clear that the legislative purpose in empowering HIA officers was to afford protection for the HIA installation and persons thereon. This framework strongly suggests a derivative approach.

Additionally, and significantly, other statutes limiting the territorial jurisdiction of security personnel contain few, if any, restrictions in terms of the types of viola-

---

**10.** It could be argued that the General Assembly crafted Section 1791.1 specifically to limit officers' authority to the premises according to the last clause of the provision quoted above ("upon any part of the premises of any such building or installation as aforesaid"). Such construction would yield the following reading: HIA officers are granted "the full power to make arrests [ ()for all violations of the law which they may witness[ ] ] upon any part of the premises," or, in other words, HIA officers may make arrests only on the premises for violations of the law which they may witness. This interpretation, however, would be inconsistent with the last antecedent rule of construction, which advises that a proviso usually is construed to apply only to the provision or clause immediately preceding it. *See Commonwealth v. Rosenbloom Finance Corp.,* 457 Pa. 496, 500, 325 A.2d 907, 909 (1974)(stating that "referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent, which consists of 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence' " (citations omitted)). Under this principle, the on-the-premises limitation is best read as applying only to the location of the violation (the last antecedent), which is consistent with the General Assembly's express focus on the protection of Commonwealth property and persons thereon. Therefore, any limitation upon an officer's territorial jurisdiction once an on-premises violation of some law was witnessed by an officer should derive from some other term of the enactment.

tions for which the officers may make arrests or the circumstances in which arrests may occur. *See, e.g.,* 4 P.S. § 325.215 (horse racing commission security personnel, cited *infra*). In contrast, legislative provisions that confer power throughout the Commonwealth tend to include limitations upon the exercise of authority outside an officer's primary territory. *See, e.g.,* 42 Pa.C.S. § 8953 (identifying the circumstances in which municipal police may conduct extraterritorial arrests); 61 P.S. § 309.1 (pertaining to arrest of parole violators, cited *supra*). Here, the range of infractions subject to the purview of HIA officers is broad, again suggesting a narrower conception of territorial jurisdiction on the part of the Legislature.[11]

■ Based upon the legislative design, we conclude that the jurisdiction of HIA police officers was constrained by that of their employer-agency and according to the purposes of their employment, in effect limiting the HIA corporal's arrest authori-

ty to airport grounds.[12] Further, since we have determined that the Legislature effectively incorporated a conception of primary jurisdiction into the pertinent enactments, we find that any authorization of extraterritorial power should necessarily be express. *Cf.* 42 Pa.C.S. §§ 8952–8953 (primary and extraterritorial jurisdiction of municipal police).

The Commonwealth Court gleaned justification for such extraterritorial authority by reference to the legislative provision affording limited statewide municipal police jurisdiction to municipal police officers. *See* 42 Pa.C.S. § 8953. It is significant, however, that, in reaching the conclusion that Section 8953 applied, the Commonwealth Court was construing a provision of the Administrative Code of 1929 that we have found to be inapplicable, *see supra* note 9 and accompanying text, and not the pertinent provisions which enable HIA police. The statute relied upon by the Commonwealth Court

---

11. The comments of the Honorable Reuben E. Cohen, made in connection with the passage of Section 1791 of Title 71, 71 P.S. § 1791, which contains provisions identical to those contained in Section 1791.1, confirm that at least one legislator held the belief that the form of enactment embodied a narrow conception of territorial jurisdiction. Representative Cohen stated as follows:

> Mr. Cohen: Mr. Speaker, may I say briefly for the information of members of the House that I have examined this bill and consulted with the Department. The only purpose of the bill is to permit the employes who are given the authority to act as police officers of institutions, to act as police officers only on the grounds of the institution itself and nowhere else.

Statement of Representative Cohen, Pa. Legis. Journal—House, p. 2926 (April 29, 1941).

12. We acknowledge the policy considerations within the General Assembly's purview in establishing the territorial jurisdiction of HIA officers. On the one hand, there is a legitimate, societal interest in assuring that wrong-

doers do not escape punishment; moreover, the implementation of strict territorial limits upon security officers might, in some instances, encourage offenders to flee to the boundaries of the airport to escape the officers' reach, thus raising safety concerns. On the other hand, particularly since the General Assembly has not implemented specific training requirements for HIA police, concerns arise regarding the conferral of broad powers, particularly in off-premises areas that may be less familiar to the officers. Indeed, the general function of airport officers (protection of airport property and persons thereon), could be viewed as having been served once an offender has departed, leaving the effectuation of more general social policy objectives, such as punishment and deterrence, to officers having broader jurisdiction. It is not our function, however, to weigh the competing policy concerns that arise in this context—such is the task of the General Assembly. The judicial undertaking is of a more limited nature, namely, to discern the intent of the General Assembly concerning the territorial jurisdiction of the officers it has empowered.

does in fact vest certain security officers with powers of municipal police. *See* 71 P.S. § 646. It was therefore not unreasonable for the Commonwealth Court to presume that such enactment incorporated the extraterritorial provisions applicable to municipal police. Neither Section 5903 of the Aviation Code nor Section 1791.1 of Title 71, however, affords HIA officers the full authority of municipal police. Rather, these statutes confer, in relevant part, a general power of arrest without reference to municipal police. It is not reasonable, therefore, in construing these provisions, to conclude that they subsume the extraterritorial authority specifically made available to municipal police officers.[13]

▌ Since we have determined that the authority of HIA police was limited to airport property, it follows that the HIA corporal lacked official authority to effectuate the off-premises stop and arrest of McKinley. Accordingly, we proceed to address the second of the pertinent questions concerning extraterritorial jurisdiction, namely, whether the extraterritorial character of the HIA corporal's activities affects his status as a "police officer" for purposes of the Implied Consent Law.

In its opinion in this case, the Commonwealth Court alluded to its prior decision in *Kuzneski v. Commonwealth,* 98 Pa. Cmwlth. 595, 597–98, 511 A.2d 951, 953 (1986), in which it considered the validity

of a license suspension based upon the appellant's refusal to submit to a breathalyzer test requested by a police officer who had stopped the appellant's vehicle outside the officer's territorial jurisdiction. The *Kuzneski* court rejected the appellant-licensee's argument that, by virtue of the extraterritorial character of the encounter, the arresting officer was not a "police officer" for purposes of the Vehicle Code. It reasoned that the Vehicle Code requires only that the person requesting the chemical test "was *in fact* a police officer," *Kuzneski,* 98 Pa.Cmwlth. at 597, 511 A.2d at 953 (emphasis added), but does not allow for a specific inquiry into whether the officer was authorized by law to make the arrest at issue. *See id.* at 598, 511 A.2d at 953 (stating that "what is important is that [the] appellant was factually placed under arrest"). More broadly, the Commonwealth Court indicated that the authority of an officer to make a particular arrest, while pertinent in a criminal proceeding, is not relevant to the questions presented in a license suspension appeal. *See id.*

Having articulated these principles in *Kuzneski,* the Commonwealth Court nonetheless deemed the extraterritorial nature of an encounter relevant and, indeed, dispositive in *Horton v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 694 A.2d 1 (Pa.Cmwlth.1997). Specifically, the court affirmed the reinstatement of a driver's license, which was suspended

---

13. Again, in other instances in which the General Assembly has intended security personnel termed police officers to have authority concurrent with that of municipal police, it has stated so in explicit terms. *See, e.g.,* 22 Pa.C.S. § 3303 (governing the powers of railroad police); 35 P.S. § 1550(ff) (housing authority police). Additionally, in such instances, the Legislature has frequently required that the officers undergo the same intensive training as municipal officers. *See* 22 Pa.C.S. § 3303(d); 35 P.S. § 1550(ff). HIA police were not required by the statute to complete

similar instruction, and, without such training, concerns arise regarding the officers' ability to perform all the functions of municipal officers in a manner consistent with public safety. *See generally Kline,* 559 Pa. at 650–51, 741 A.2d at 1283. For these reasons, absent a clear expression of legislative purpose, we decline to infer that the Legislature intended to grant discrete categories of security officers the full powers of municipal police. *See generally Kline,* 559 Pa. at 654, 741 A.2d at 1284; *Leet,* 537 Pa. at 96–97, 641 A.2d at 303.

based upon the licensee's refusal to submit to chemical testing, upon a finding that the request was made outside the jurisdiction of a campus police officer. *See id.* at 3.[14] In reaching this conclusion, the Commonwealth Court considered the Superior Court's holding in a criminal case that the extraterritorial nature of an encounter warranted invocation of the remedy of suppression. *See id.* (citing *Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991)). Without acknowledging *Kuzneski*'s contrary approach and relying upon *Savage*, the Commonwealth Court indicated that, by virtue of the extraterritorial nature of the encounter, the officer "was not authorized to arrest [the licensee] for driving under the influence and any refusal to submit to chemical testing was inconsequential." *Horton*, 694 A.2d at 3.[15]

■ In the present case, the Commonwealth Court appears to have appreciated the tension between *Kuzneski* and *Horton*, compare *McKinley*, 739 A.2d at 1136, *with id.* at 1138, but its reasoning did not require the court to squarely confront the conflict, since it found that there was no extraterritorial aspect to the HIA corporal's interaction with McKinley, a conclusion which we have determined was incorrect. Therefore, a remand is appropriate to permit the Commonwealth Court to clarify its jurisprudence concerning the consequence, in a license suspension proceeding, of a determination that the underlying police-citizen encounter occurred outside the officer's territorial jurisdiction, including how the encounter should be analyzed vis-à-vis the terms of the Implied Consent Law, as well as the relevancy, if any, of the processes and protections available in criminal proceedings.[16] More specifically, the Commonwealth Court should consider whether the extraterritorial nature of an encounter undermines the officer's status as a "police officer" under the Implied Consent Law, with reference to *Kuzneski* and *Horton*; if not, whether and to what extent the extraterritorial aspect impacts upon the statutory requirement that the officer possess reasonable grounds to believe that the licensee was

14. The Commonwealth Court found that the officer was vested with the powers of a municipal police officer, but subject to a statutorily prescribed territorial limitation specific to campus police. *See id.*

15. The Commonwealth Court's citation to *Savage* implicates the question of whether, and to what extent, the process and protections provided in criminal proceedings, including the availability of the exclusionary rule, should apply in civil, administrative license suspension proceedings. Courts are divided nationally concerning this issue. *Compare State v. Lussier*, 757 A.2d 1017, 1026–27 (Vt.2000)(holding that the exclusionary rule should apply in license suspension proceedings, *inter alia*, to protect core values of privacy under the Vermont Constitution, to promote the public's trust in the judicial system, and to assure that unlawful police conduct is not encouraged), *with Fishbein v. Kozlowski*, 252 Conn. 38, 743 A.2d 1110, 1119 (1999)(holding that due process does not re-

quire application of the exclusionary rule in license suspension proceedings, its application would have incremental deterrent value, and any benefit would be outweighed by the societal interest in having otherwise reliable evidence of probable cause to arrest for driving while intoxicated presented at the hearing). *See generally* Annotation, *Admissibility, in Motor Vehicle License Suspension Proceedings, of Evidence Obtained by Unlawful Search and Seizure*, 23 A.L.R.5th 108 (1994)(collecting cases).

16. In light of the limitation upon the issues imposed by our order allowing appeal, briefing has not been provided covering the full continuum of pertinent issues; consequently, while it would be possible for this Court to presently undertake review of the dispositive questions, a remand is the better course. As previously noted, the issues have been sufficiently raised and preserved in substance in the Commonwealth Court and in the petition for allowance of appeal. *See supra* note 7.

driving under the influence; [17] and, if it is of no significance to the assessment of reasonable grounds, whether the extraterritorial aspect warrants the remedy of suppression, as alluded to in *Horton.* See *supra* note 15.[18]

In summary, the HIA corporal possessed legislative authorization to stop and arrest for violations of the Motor Vehicle Code solely on airport premises. The consequence of this conclusion in terms of the appropriate disposition of the present appeal is to be determined by the Commonwealth Court on remand.

The order of the Commonwealth Court is vacated, and the case is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

Justice ZAPPALA concurs in the result.

Justice NEWMAN files a dissenting opinion.

NEWMAN, Justice, dissenting.

Although I agree with the majority's conclusion that a Harrisburg International Airport (HIA) police officer qualifies as a "police officer" for purposes of enforcement of the Implied Consent Law, I respectfully disagree with its determination that HIA officers lack extraterritorial arrest powers. Consequently, I would affirm the decision of the Commonwealth Court upholding Appellant's driver's license suspension.

Preliminarily, I note my disagreement with the decision of the majority to examine any issue concerning the scope of the HIA officer's arrest powers. As our order granting allocatur in this case made clear, we limited the appeal solely to the question of whether an HIA police officer is a police officer pursuant to 75 Pa.C.S. § 1547. In his Petition for Allowance of Appeal, Appellant requested review of "whether the Commonwealth Court erred in deciding that Corporal Miller, as a Har-

---

**17.** Significantly, the holding of *Kuzneski* may be separated from its broader dictum. The specific issue under consideration was whether an officer acting outside his territorial jurisdiction constituted a "police officer" for purposes of the Implied Consent Law. *See Kuzneski,* 98 Pa.Cmwlth. at 596, 511 A.2d at 952. The Commonwealth Court answered this question in the affirmative. The *Kuzneski* court did not expressly consider the extraterritorial nature of the encounter in light of the Implied Consent Law's separate requirement that a police officer possess "*reasonable* grounds to believe" that the licensee was driving while intoxicated, *see* 75 Pa.C.S. § 1547 (emphasis added); therefore it provided no analysis concerning whether and to what extent a police officer's observations during an unauthorized, extraterritorial encounter may constitute such reasonable grounds. Nevertheless, the broad dictum of *Kuzneski* was to the effect that the extraterritorial nature of an encounter is irrelevant to the issues presented in a license suspension appeal. *See Kuzneski,* 98 Pa.Cmwlth. at 598, 511 A.2d at 953.

**18.** In this regard, although courts disagree on this question, in this Commonwealth an unauthorized, extraterritorial stop and arrest by a uniformed officer displaying accouterments of state authority is analyzed as an illegal encounter. *See Commonwealth v. Price,* 543 Pa. 403, 411–12, 672 A.2d 280, 284 (1996); *Commonwealth v. Bradley,* 724 A.2d 351, 353–54 (Pa.Super.), *appeal denied,* 560 Pa. 696, 743 A.2d 913 (1999). *But see generally* Annotation, *Validity, in State Criminal Trial, of Arrest Without Warrant by Identified Peace Officer Outside of Juridiction, When Not in Fresh Pursuit,* 34 A.L.R.4th 328, § 4, 6 (1984)(citing jurisdictions that would analyze such encounters in relation to felonies and breaches of the peace, to include DUI arrests, as citizens' arrests); *State v. Gustke,* 205 W.Va. 72, 516 S.E.2d 283, 288–91 (1999)(same). Therefore, such illegality would implicate the remedy of suppression in the criminal context, *see Bradley,* 724 A.2d at 353–54; however, it is for Commonwealth Court to determine, in the first instance, the relevance and effect of this characterization in a civil, administrative license suspension appeal.

risburg airport police officer, had extraterritorial police powers where the lower court specifically found that 'no specific motor vehicle violation occurred while on the airport premises...it was only after Corporal Miller left his jurisdiction that reasonable grounds developed?' " We declined review of this question. In my view, it is not consistent with our scope of review in this case for the majority to determine the extraterritorial arrest powers of an HIA police officer.

Nevertheless, because the majority addresses the issue, I wish to express my disagreement with its conclusion that HIA police officers lack extraterritorial arrest powers. Section 5904(a)(10) of the Aviation Code empowers HIA police officers to "perform arrests." 74 Pa.C.S. § 5904(a)(10). I do not read the remaining statutory provisions cited by the majority to prohibit an HIA police officer from pursuing a driver whom the officer witnesses violating the vehicle code, even if the officer effectuates the stop while not on airport property. The decision of the majority handcuffs legitimate law enforcement activities in stopping drivers who present a danger to other motorists, and I do not see a clear legislative purpose to place such limitations on HIA police officers. When, as in this case, an HIA officer views conduct while on airport property that creates a reasonable suspicion that a person may be driving while under the influence, the officer is empowered to stop the person and investigate. 74 Pa.C.S. § 5904(a)(10). If the officer pursues that individual beyond the boundaries of the airport in order to investigate further the driver's suspicious behavior, then that is merely a continuation of the officer's origi-nal investigatory power. Further, the absence of an express statutory grant of "hot pursuit" powers to HIA police, such as that governing municipal police officers,[1] does not necessarily mean that HIA police lack inherent pursuit powers. I cannot accept that the legislature would have intended to limit an HIA police officer's authority by compelling him or her to halt his or her investigation of suspected criminal activity at the airport property boundary.

Accordingly, I dissent.

---

1. *See* 42 Pa.C.S. § 8953(a)(2). The legislative grant of "hot pursuit" powers to municipal police officers should be read as part of the legislative scheme to coordinate the authority of the various municipal police departments statewide. It does not indicate, however, a legislative intent to restrict the extraterritorial law enforcement activities by police officers generally.